UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-61687-CIV-ROSENBAUM/HUNT

PERRY KAYE, *et al.*,

    Plaintiffs,

v.

INGENIO, FILIALE DE LOTO-QUEBEC,
INC.,

    Defendant.
_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

This matter is before the Court upon Defendant Ingenio, Filiale De Loto-Quebec, Inc.'s Motion to Dismiss Amended Complaint [ECF No. 30].  The Court has reviewed the motions, all supporting and opposing filings, and the record in this case, and is otherwise fully advised in the premises.  For the reasons set forth below, the Court now grants Defendant's Motion.

### I.  BACKGROUND[1]

**A.  The Patents**

Prior to April 1995, Plaintiff Perry Kaye developed a new method for playing interactive lottery games for application in lotteries, charitable sweepstakes, and promotional sweepstakes.  ECF No. 23 at ¶ 9.  Kaye obtained two patents stemming from his invention in October 1996 and January 1998 (the "Patents").  *See id.* at ¶¶ 10, 11; *see also* ECF No. 23-1; ECF No. 23-2.  According to

---

[1] The facts in the Background section are drawn from the Amended Complaint.  On a Motion to Dismiss, the Court assumes factual allegations to be true.  *See, e.g.*, *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011).

Kaye, the Patents are applicable to lottery games that require payment associated with participation in a "chance to win," as well as lottery-type games where no payment is required to participate. ECF No. 23 at ¶¶ 12, 13.

## B. The Assignment of the Patents to Defendant

In early 1999, Kaye was contacted by a Canadian attorney who stated that his client was interested in purchasing the Patents. ECF No. 23 at ¶ 14. The client, later revealed to be Defendant Ingenio, the research-and-development subsidiary of the Quebec provincial lottery Loto-Quebec ("Ingenio"), began to solicit Kaye for the purchase of the Patents. *Id.* at ¶ 15. Ingenio stated that it was not interested in applying the Patents to promotional lotteries and sweepstakes. *Id.* at ¶ 17.

As negotiations progressed, it became clear that the parties were not going to agree to a payment price that accorded with Kaye's personal valuation of his Patents. As a result, Kaye sought alternative consideration. *Id.* at ¶¶ 21, 22. The parties reached a compromise wherein Ingenio agreed to pay Kaye for the assignment of all rights, title, and interest in the Patents, while simultaneously licensing the Patents back to an entity owned by Kaye, Plaintiff Gizmo Enterprises, Inc.,[2] for their use in the fields of promotional and charitable lotteries. *Id.* at ¶¶ 25, 28. Eventually, Kaye agreed to a purchase price of $500,000, and on March 5, 1999, the parties' compromise was memorialized in two agreements: an Assignment Agreement and a License Agreement. *Id.* at ¶¶ 26-28; ECF No. 23-3 at 2.

---

[2] The captioned Plaintiff companies are entities owned or operated by Plaintiff Perry Kaye. For simplicity's sake, the Court uses "Kaye" to refer to collectively to all Plaintiffs.

The License Agreement granted Kaye the right to prosecute all infringements of the Patents in the event that Ingenio decides not to do so. ECF No. 23 at ¶ 28. More specifically, the License Agreement states,

> In the event that the Licensee . . . learns of any infringement or threatened infringement or piracy of . . . any of the Patents, whether in whole or in part . . . the Licensee . . . shall forthwith give notice thereof to the Licensor, together with all such other information with respect thereto as the Licensee . . . may from time to time obtain. The Licensor shall, in its absolute discretion, institute or not institute proceedings or defend or not defend proceedings with regard to any of the foregoing matters as the Licensor shall deem fit, provided, *however, where the Licensor decides not to institute or defend any proceeding, it shall advise the Licensee of the same and in such circumstance, the Licensee shall have the right, at its own cost and expense, to institute or defend such proceeding, as applicable, with respect to the patents* . . . .

*See* ECF No. 23-4 at 5-6 (emphasis added). In the event Kaye seeks to prosecute infringers, Kaye may be required "to provide bond or other security satisfactory to the Licensor, acting reasonably, to cover the cost (including judgment award or costs) and charges or expenses that the Licensor may face or be liable for with respect to such proceeding." *Id.* If Kaye disagrees with the bond set by Ingenio and the parties cannot resolve the bond dispute, an independent arbitrator may be appointed to do so. *Id.*

While the Assignment Agreement dictates that disputes arising from it shall be governed by Florida law, the License Agreement states that the parties consent to the exclusive jurisdiction of the Province of Quebec and that all disputes arising from it shall be governed by the laws of the Province of Quebec. *See* ECF No. 23-3 at 6; ECF No. 23-4 at 9. Additionally, both the License Agreement and the Assignment Agreement contain integration clauses stating that the "terms, conditions and provisions contained [therein] constitute the entire agreement between the parties" and shall

supersede all prior negotiations. *See* ECF No. 23-4 at 9; ECF No. 23-3 at 6. Yet, according to Kaye, the Agreements "formed a single, unitary transaction," despite being memorialized in separate documents. ECF No. 23 at ¶ 29.

## C. Infringement and Subsequent Dispute

At some point in 2003, Ingenio learned of potential infringement and sought Kaye's assistance with the prosecution. ECF No. 23 at ¶ 30. Their investigation into the infringement culminated in Ingenio's filing of an infringement action in the United States District Court for the District of Delaware (the "2004 Litigation"). *Id.* at ¶¶ 30-33. After the entry of partial summary judgment for Ingenio, the case settled. *Id.* at ¶¶ 38, 39. Kaye believes that the settlements of the 2004 Litigation resulted in the issuance of licenses to the various defendants in that litigation. *Id.* at ¶ 41. Despite Kaye's involvement in the prosecution and his signing of a "Consulting Agreement" with Ingenio, Kaye was never made aware of the terms of the settlement and continues to be kept in the dark regarding the suspected licenses. *Id.* at ¶¶ 35-43.

In 2009, Kaye became aware of widespread infringement of the Patents by "Internet Cafes" located throughout the United States. *Id.* at ¶ 44. Soon thereafter, Kaye informed Ingenio. *Id.* at ¶ 48. Pursuant to the License Agreement, Kaye requested that Ingenio initiate suit against the suspected infringers, or, if Ingenio decided not to prosecute, that Ingenio allow Kaye to do so as permitted under the License Agreement. *Id.* at ¶ 49. Rather than respond to Kaye's request, however, Ingenio allegedly began making unreasonable demands. *Id.* at ¶¶ 51, 61-68. According to the Amended Complaint, Ingenio demanded documents regarding the proposed infringement litigation and continued to do so from 2009 through 2013. *Id.* Additionally, Ingenio required Kaye

to post a bond of $150,000 before it would allow it to institute proceedings.³  *Id.* at ¶ 52.  Disputing the bond amount, the parties opted for arbitration pursuant to the License Agreement on April 15, 2013.  *Id.* at ¶¶ 55-57.  One month later, the arbitrator rendered a decision finding the $150,000 security to be unreasonable and setting bond at $50,000.  *Id.* at ¶ 59; ECF No. 23-5 at 15.

After years of complying with Ingenio's allegedly preposterous demands, Kaye now avers that Ingenio had no intention of permitting Kaye or his companies to exercise their right to pursue infringers.  ECF No. 23 at ¶¶ 61-78.  To date, Ingenio has not decided whether to initiate proceedings or allow Kaye to proceed.  *Id.* at ¶ 75.  Kaye asserts that Ingenio's actions are unreasonable, unwarranted, and committed in bad faith.  *Id.* at ¶¶ 76, 77.  As a result of Ingenio's alleged bad faith, Kaye instituted the instant action seeking to rescind the Agreements.  Specifically, Kaye brings claims for fraud in the inducement (Count I) and unjust enrichment (Count IV), and seeks remedies in the form of rescission (Count II), accounting (Count III), and constructive trust (Count V).

## II.  LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual

---

³ On August 13, 2012, Gizmo assigned its rights under the License Agreement to Sweepstakes Patent Company ("SPC"), another entity operated by Kaye.  ECF No. 23 at ¶ 47.  Therefore, at this stage, SPC was required to post the bond.

enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002).

### III.  DISCUSSION

**A.  Kaye's Fraudulent Inducement Claim is Actually a Claim for Breach of Contract**

First, the Court considers whether Kaye has brought the appropriate claims. Ingenio contends that Kaye has actually asserted a standard breach-of-contract claim but has attempted to couch it as a tort in order to avoid the License Agreement's forum-selection clause. Namely, Ingenio asserts that Kaye's claims arise from Ingenio's failure to perform its contractual obligations under the License Agreement.

To counter this, Kaye argues that his tort claim and any claim for breach of contract are distinct. According to Kaye, Ingenio procured the assignment of the Patents by promising Kaye a license that could be used and enforced; however, Ingenio never intended to allow Kaye to make use of this enforcement right, as demonstrated by its purported bad faith. Thus, the alleged fraud occurred at the initial exchange: Kaye supposedly sold the Patents at what he believed to be a sub-par value in exchange for a license that he could never enforce.

In addressing this issue, the Court begins with a brief review of the economic-loss rule. In *Tiara Condominium Association, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399 (Fla. 2013), the Florida Supreme Court discussed the origins of the rule and clarified its application. As the court explained, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Id.* at 401 (citation omitted). The rule was created in an effort to stem the application of tort remedies to traditional contract-law damages. *Id.* Before Florida's Supreme Court decided *Tiara*, Florida courts described applying the economic-loss rule to both products-liability cases and to cases involving parties in contractual privity where one party sought to obtain damages in tort for matters arising from the contract. *Id.* at 402. In the pre-*Tiara* cases involving parties in contractual privity, Florida courts described the economic-loss rule as barring tort claims where "the fraud complained of relate[d] to the performance of the contract . . . ." *See Brown v. Chamax, LLC*, 51 So. 3d 552, 556 (Fla. 2d DCA 2010) (citation omitted). But *Tiara* clarified that the economic-loss rule applies to only cases involving products liability, not to cases involving parties in contractual privity, *see Tiara*, 110 So. 3d at 407, such as the pending matter.

Nevertheless, the fact that the economic-loss rule does not apply to cases where the parties are in contractual privity does not mean that parties in contractual privity may recast causes of action that are otherwise breach-of-contract claims as tort claims. Instead, "'fundamental contractual principles' already properly delineate the general boundary between contract law and tort law." *Tiara*, 110 So. 3d at 409 (Pariente, J., concurring) (citing *Moransais v. Heathman*, 744 So. 2d 973, 981 (Fla. 1999)). Therefore, to set forth a claim in tort between parties in contractual privity, a party must allege action beyond and independent of breach of contract that amounts to an independent tort.

*See Tiara*, 110 So. 3d at 408 (Pariente, J., concurring) (quoting *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.*, 482 So. 2d 518, 519 (Fla. 3d DCA 1986)).  As Justice Pariente explained in her concurrence in *Tiara*,

> Our decision is neither a monumental upsetting of Florida law nor an expansion of tort law at the expense of contract principles.  To the contrary, the majority merely clarifies that the economic loss rule was always intended to apply only to products liability cases. . . .
>
> The majority's conclusion that the economic loss rule is limited to the products liability context ***does not undermine Florida's contract law or provide for an expansion in viable tort claims.  Basic common law principles already restrict the remedies available to parties who have specifically negotiated for those remedies, and . . . our clarification of the economic loss rule's applicability does nothing to alter these common law concepts***.  For example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim. . . .

*Tiara*, 110 So. 3d at 408-09 (Pariente, J., concurring) (emphasis added).

With these principles in mind, the Court considers whether Kaye's fraudulent-inducement claim states a cause of action in tort that is separate and apart from any alleged breach of contract.  Under the circumstances of this case, the Court finds that it does not.

Fraudulent inducement is generally "a tort independent from a breach of contract because it requires the plaintiff to prove facts separate and distinct from the facts necessary to prove the breach of contract."  *Freeman*, 2013 WL 2151723, at *8 (citing *HTP, Ltd. v. Lineas Areas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)) (noting that fraud in the inducement "normally occurs prior to the contract . . . [and] whether the defendant was truthful during the formation of the contract is unrelated to the events giving rise to the breach of the contract").  In assessing whether fraud in the inducement is distinct from a claim arising under a contract, the critical inquiry focuses on whether

the alleged fraud is separate from the performance of the contract. *Id.* (citing *Medalie v. FSC Securities Corp.*, 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000)).

Here, Kaye's claims of fraud are precisely the same as a potential breach-of-contract claim. *Compare Altenel*, 947 F. Supp. 2d at 1369 (granting motion to dismiss based on the conclusion that the contractual provisions at issue directly contradicted the purported fraud) *with Freeman*, 2013 WL 2151723 at *8 (denying motion to dismiss to the extent the allegations of fraud were not covered by the contract at issue); *see also Joyeria Paris, SRL v. Gus & Eric Custom Servs., Inc.*, 2013 WL 6633175 at *4 (S.D. Fla. Dec. 17, 2013) (finding that plaintiff failed to plead a separate cause of action for fraud and granting dismissal on such count); *Medalie v. FSC Securities Corp.*, 87 F. Supp. 2d 1295, 1305 (S.D. Fla. 2000) (finding that the misrepresentations forming the basis of the fraud allegation were the same misrepresentations that formed the basis of the breach of contract claim). The alleged fraudulent representation—that Ingenio would allow Kaye to prosecute infringers—is a right specifically embodied in the License Agreement. While the initial promise may have been fraudulent, the terms of the purported fraud were memorialized in the License Agreement. As a result, any failure to comply with those terms results in an action for breach of contract.

Although Kaye attempts to characterize his claim as sounding in fraud, the factual allegations reveal nothing more than a purported breach of contract. Suggesting that a subtle distinction between the fraud and a potential breach of contract exists, Kaye states that "Ingenio offered the license as a sham so it could buy the patents at a bargain price." But a failure to allow Kaye to exercise a right granted to him by the License Agreement is merely a breach of the License Agreement. Moreover, if Kaye is able to prove breach of the License Agreement, he will have received the full anticipated value of his bargain, despite a purported fraud resulting in a discounted

assignment of the Patents. Thus, the appropriate action lies in contract, not in tort. As Justice Pariente explained in her *Tiara* concurrence, "when the parties have negotiated remedies for nonperformance pursuant to a contract, one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss." *Tiara*, 110 So. 3d at 409 (Pariente, J., concurring) (quoting *Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 542 (Fla. 2004)). (internal quotation marks omitted). Accordingly, Kaye's fraudulent-inducement claim must fail, and Ingenio's motion is granted with respect to Count I.[4]

But even if contractual principles did not preclude a claim for fraudulent inducement, the claim still could not succeed, as Kaye's fraudulent-inducement claim is also barred by the statute of repose. Florida law provides a four-year statute of limitation for actions based on fraud, "running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence." Fla. Stat. § 95.11(3)(j) and 95.031(2)(a). "[B]ut in any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, *regardless of the date the fraud was or should have been discovered*." Fla. Stat. § 95.031(2)(a) (emphasis added). The instant litigation was filed in state court on June 18, 2013, fourteen years after the alleged fraud. Nonetheless, Kaye asserts that Ingenio's fraud constitutes a continuing tort that tolls both the statute of limitations and statute of repose.

While a continuing fraud may toll the statute of limitations under Florida law, a "continuing fraud theory does not operate to extend a statute of repose." *Shepard v. Phillip Morris, Inc.*, 1998

---

[4] The Court notes that Kaye, in pursuing a claim for fraudulent inducement only, has chosen not to plead an alternative claim for breach of contract. Amendment of the Complaint to include this claim would be futile, however, as the License Agreement contains an explicit forum-selection clause requiring breach-of-contract claims to proceed in Quebec.

WL 34064515 at *4 (M.D. Fla. Apr. 28, 1998) (citation omitted) (noting that plaintiff was unable to locate any authority stating that Florida law permits tolling of the statute of repose). But if detrimental reliance has occurred within twelve years of filing suit, the statute of repose is not a bar. *See Philip Morris USA, Inc. v. Naugle*, 103 So. 3d 944, 947 (Fla. 4th DCA 2012); *see also Philip Morris USA, Inc. v. Kayton*, 104 So. 3d 1145, 1150-51 (Fla. 4th DCA 2012) ("Because fraud cannot be committed absent detrimental reliance by the plaintiff . . . whether a fraudulent act was committed within twelve years of the filing of an action can only be determined based on the timing of a particular plaintiff's alleged reliance."). In the instant litigation, any detrimental reliance that occurred happened when Kaye assigned the Patents for a price that he deemed to be below their actual value.

Even when viewing the facts in a light most favorable to Kaye, the fraudulent action was not continuous. As previously noted, the alleged fraud was Ingenio's promise to allow Kaye to enforce the Patents under the License Agreement, thereby obtaining an assignment at a discounted rate. Once the assignment was obtained, any alleged fraudulent inducement had been completed. *See Philip Morris USA, Inc. v. Hess*, 95 So. 3d 254, 260 (Fla. 4th DCA 2012) (noting that the statute of repose "may also prevent the accrual of a cause of action where the final element necessary for its creation occurs beyond the time period established by the statute"). Thus, at the very latest, the detrimental reliance at issue here occurred on March 5, 1999.

Moreover, the fact that Kaye claims to have only recently discovered the fraud is immaterial to the statute-of-repose inquiry. *See* Fla. Stat. 95.031(2)(a) ("[B]ut in any event an action for fraud under s. 95.11(3) must be begun within 12 years after the date of the commission of the alleged fraud, regardless of the date the fraud was or should have been discovered."). Thus, even if the

Court were to find that Kaye's fraudulent-inducement count were not actually a claim for breach of contract in disguise, the claim would still be barred under the statute of repose. Accordingly, Kaye's claim for fraudulent inducement must be dismissed.

## B.  Kaye Has Failed to Properly Plead a Claim for Rescission

Kaye also seeks recovery on a theory of rescission. In the Amended Complaint, Kaye avers that Ingenio's refusal to permit Kaye to act under the License Agreement resulted in the rescission of the Assignment Agreement.

"Rescission is an equitable remedy," the purpose of which "is to undo the original transaction and restore the former status of the parties." *Billian v. Mobil Corp.*, 710 So. 2d 984, 990-91 (Fla. 4th DCA 1998). "Where the remedy is justified because fraud has been established, a court 'may set aside all transactions founded on it.'" *Id.* at 990 (quoting *Willis v. Fowler*, 136 So. 368, 368 (Fla. 1931)). In order to state a claim for rescission under Florida law, a plaintiff must plead six facts:

> (1)[t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; and (6) [l]astly, that the moving party has no adequate remedy at law.

*Barber v. America's Wholesale Lender*, 542 F. App'x 832, 836 (11th Cir. 2013) (citing *Billian v. Mobil Corp.*, 710 So. 2d 984, 991 (Fla. 4th DCA 1998)). While Ingenio generally alleges that Kaye has failed to plead all six of these essential elements, the Court finds that the Amended Complaint fails only with respect to element five.[5]

---

[5] Kaye sufficiently alleges elements one through four in his Amended Complaint. The nature of the relationship clearly formed by contract is that of assignor/assignee and licensor/licensee. *See*

As noted above, the fifth element requires the plaintiff, as a prerequisite to stating a cause of action for rescission, to restore or at least offer to restore to the defendant the benefits conferred upon the plaintiff. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 313 (Fla. 2000); *see also Barber*, 542 F. App'x at 836 (finding that plaintiff's complaint failed to state claim for rescission because of a lack of allegations that plaintiffs were willing to return defendant to the status quo); *Bank of New York Mellon v. Reyes*, 126 So. 3d 304, 308 n. 4 (Fla. 3d DCA 2013) (holding that absent allegations that plaintiff agreed to return defendant to the status quo ante, rescission was not possible). But a party need not tender the benefit under the contract if it is impossible for the party to do so. *See Jackson v. BellSouth Telecommunications, Inc.*, at *9 (S.D. Fla. June 4, 2002); *see also Barber*, 542 F. App'x at 836 (stating the requirement that the plaintiff "should further allege an offer to restore these benefits to the party furnishing them, *if restoration is possible*" (emphasis added)). Furthermore, "a party's right to rescind is subject to waiver if he retains the benefits of a contract after discovering the grounds for rescission." *Mazzoni Farms*, 761 So. 2d at 313 (citation omitted). But, as Kaye correctly notes, it is not necessary that benefits be restored; the party must simply allege a present intent to return the parties to their original positions.

---

ECF No. 23 at ¶¶ 26-29, 92-93. Although Ingenio disputes whether Kaye provided notice of rescission, the Court is obligated to accept as true Kaye's contention that he "informed Ingenio that . . . the Assignment Agreement is rescinded." *Id.* at ¶ 97; *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Allegations of fraud and notification have also been adequately pled. *See* ECF No. 23 at ¶ 94-96, 97. With respect to the sixth element, "a court is rarely able to determine the adequacy of a remedy at law at the pleading stage of a case before the facts are developed." *Billian v. Mobil Corp.*, 710 So. 2d 984, 990-91 (Fla. 4th DCA 1998); *see also Rubesa v. Bull Run Jumpers, LLC*, 2010 WL 376320 at *3 (S.D. Fla. Jan. 26, 2010) (refusing to determine whether plaintiff had an adequate remedy at law until the facts had become more developed despite the assertion of an alternative claim for a legal remedy). While Kaye may have an adequate remedy at law under a theory of breach of contract, the Court declines to opine on the adequacy of this remedy, especially given the forum-selection clause within the License Agreement. Nonetheless, Kaye's claim for rescission is inadequately pled for failing to allege a willingness to return the parties to the *status quo ante*.

The benefits conferred upon Kaye by virtue of the Assignment Agreement include a purchase price of $500,000. *See* ECF No. 23-3 at 2. Although Kaye states that he has alleged "a willingness to restore the benefits," a straightforward reading of the Amended Complaint reveals that this is not the case. *See* ECF No. 36 at 18. Critically, Kaye never asserts that an offer to restore such benefits occurred. *See* ECF No. 23 at ¶¶ 98-99. Rather, Kaye avers that Ingenio, by its fraud, has received numerous benefits under the Assignment Agreement that make it inequitable to restore the initial benefits, including the $500,000. *See id.* Viewing the allegations in the Amended Complaint in a light most favorable to Kaye reveals that Kaye does not have a present willingness to return to the *status quo* by giving back the $500,000. Rather, Kaye seeks to have the monies reduced by the benefits allegedly conferred on Ingenio by virtue of its utilization of the Patents over the course of the past fourteen years.

Even though a plaintiff may not be obligated to restore the proceeds at issue when the plaintiff files suit, "Florida law requires plaintiffs to plead that they actually did or are willing to return the defendant to the status quo."[6] *See Barber*, 542 F. App'x at 836-37; *see also Bland v.*

---

[6] Kaye cites to *Mulle v. Scheiler*, 484 So. 2d 47, 48 (Fla. 5th DCA 1986), for the proposition that the restoration requirement is excused so long as "the inability to restore is caused by the very fraud perpetrated by the other party." *See* ECF No. 36 at 19. *Mulle* indeed states that a party may still achieve rescission if restoration is impossible by reason of the wrongful conduct. *See id.* But *Mulle* does not purport to modify or extinguish the pleading requirement that a party must allege an offer to restore such benefits. Nor does Kaye at any point allege an inability to restore the benefits.

The Eleventh Circuit has previously stated that "the party claiming rescission need not tender back what he is entitled to keep, and need not offer to restore where the defrauding party has made restoration impossible, *or when to do so would be unreasonable*." *See Denim North America Holdings, LLC v. Swift Textiles, LLC*, 532 F. App'x 853, 860-61 (11th Cir. 2013) (emphasis added). While this language appears to support the contention that if restoration is unreasonable a party need not allege that she has made such an offer to do so, the Eleventh Circuit in *Denim* was clearly applying Georgia, not Florida, law. *See id.* (citing *Crews v. Cisco Bros. Ford-Mercury, Inc.*, 201 Ga. App. 589, 411 S.E.2d 518 (Ga. Ct. App. 1991)). Further, the Eleventh Circuit was inquiring into whether the plaintiff had waived his right to rescind by

*Freightliner LLC*, 206 F. Supp. 2d 1202, 1208-09 (M.D. Fla. 2002) (despite being unable to determine whether the parties could be returned to the status quo, the plaintiffs had "sufficiently pled an attempt to place the parties in their original positions"). Here, Kaye does not allege that restoration is "impossible," but rather that to force restoration would be unjust. *Cf. Staaldam Beheer B.V. v. ASAP Installations, LLC*, 2010 WL 1730780 at *4-5 (M.D. Fla. Apr. 28, 2010) (finding that plaintiffs had met the fifth requirement to state a claim for rescission despite not alleging that they had made an offer to restore because "plaintiffs clearly state[d] that they received *no benefit* from the [contract]" and thus had nothing to return). This is simply insufficient. Indeed, the Eleventh Circuit recently held that a district court's dismissal was proper where a plaintiff offered to restore only the funds to which he believed the defendant was entitled to rather than the full amount, without also pleading that restoration of the full amount was impossible. *See Odyssey Marine Exploration, Inc. v. Unidentified, Shipwrecked Vessel or Vessels*, 512 F. App'x 890, 894 (11th Cir. 2013).

As Kaye has failed to appropriately plead a claim for rescission, this count must be dismissed. If Kaye so chooses, however, he may amend his pleading to fully meet the pleading requirements as explicated by *Barber v. America's Wholesale Lender*, 542 F. App'x 832, 836 (11th Cir. 2013). As Kaye concedes that his "claim for accounting is expressly dependent upon [his] claim for rescission," Court III must be dismissed as well. This claim, too, may be re-submitted pending amendment of Kaye's rescission claim.

**C. Kaye's Unjust Enrichment Claim**

Kaye's final substantive count is for unjust enrichment. *See* ECF No. 23 at ¶¶ 104-111.

---

invoking a provision to obtain a benefit under the contract at issue. *See id.* at 859-61. Hence, the quoted language is merely dicta inapplicable to the instant litigation.

Unjust enrichment is a quasi-contractual remedy in which the court "implies a contract as a matter of law even though the parties to such an implied contract never indicated by deed or word that an agreement existed between them." *14th & Heinberg, LLC v. Terhaar and Cronley Gen. Contractors, Inc.*, 43 So. 3d 877, 880-81 (Fla. 1st DCA 2010) (citing *Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 805 (11th Cir. 1999)). The principle behind the theory of unjust enrichment is that "it is deemed unjust for one party to have received a benefit without having to pay compensation for it." *Id.* Florida law requires a plaintiff to establish all of the following elements to state a claim of unjust enrichment:

> (1) the plaintiff must have conferred a benefit on the defendant; (2) the defendant must have knowledge of the benefit; (3) the defendant must have accepted or retained the benefit conferred; and (4) the circumstances must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it.

*Merle Wood & Associates, Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997)) (internal formatting removed).

Like his other assertions, Kaye's claim for unjust enrichment is predicated on the benefit granted to Ingenio by the Assignment Agreement. *See id.* Ingenio's argument as to why the claim should be dismissed is threefold: (1) the claim is barred by the existence of the Assignment Agreement; (2) Ingenio has paid "fair value" for the benefit it has received; and (3) even if properly pled, the claim is barred by the statute of limitations. Ingenio's third argument is persuasive; Kaye's unjust-enrichment claim is barred by the applicable statute of limitations.

Section 95.11, Fla. Stat., sets forth a four-year statute of limitations for "legal or equitable action on a contract, obligation, or liability not founded on a written instrument." Fla. Stat. §

95.11(3)(k); *see also Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. 4th DCA 2005) ("The statute of limitations on a claim for unjust enrichment is four years") (citing to section 95.11(3)(k)). For the purposes of unjust enrichment, the statute "generally begin[s] to run upon the occurrence of the event that created the uncompensated benefit in the defendant." *Beltran v. Vincent O. Miraglia, M.D., P.A.*, 125 So. 3d 855, 859 (Fla 4th DCA 2013). Kaye contends that more discovery is required to determine when, if at all, Ingenio unjustly enriched itself by practicing or licensing the patents in Plaintiff's field of use.

But the statute of limitations is not triggered by when the defendant availed himself of the benefit. Instead, it relies on the point in time when the uncompensated benefit was actually conferred. *See id.* The allegations in the Amended Complaint reveal that the benefit was conferred when the Assignment Agreement was executed. Specifically, the Amended Complaint states that "Ingenio received a benefit from Mr. Kaye, *to wit, assignment of the [] Patents and all substantial rights in the [] Patents* subject only to the License Agreement." ECF No. 23 at ¶ 106 (emphasis added). Thus, the statute was triggered on March 5, 1999. As Kaye's claim for unjust enrichment was not filed until fourteen years after the assignment of the Patents, that claim falls well outside the four-year statute of limitations and is therefore barred. *See, e.g.*, *In re Burton Wiand Receivership Cases Pending in the Tampa Div. of the Middle Dist. of Fla.*, 2008 WL 818504 at *8 (M.D. Fla. Mar. 26, 2008) (rejecting the argument that the last element of an unjust enrichment claim occurs "when it becomes inequitable for a defendant to retain the benefit" and reiterating that "an unjust enrichment claim accrues when the benefit is conferred")*; see also Merle*, 714 F.3d at 1237 (upholding district court's finding that claim for unjust enrichment was barred by statute of limitations when plaintiff's complaint stated the benefit conferred fell outside the statute).

Because Kaye's unjust-enrichment claim must be dismissed, his claim for constructive trust must also be dismissed, as "a constructive trust is not a traditional cause of action, but an equitable remedy that must be based upon an established cause of action." *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (per curiam) (dismissing constructive-trust claim because no established cause of action was present).

## IV.  CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Defendant Ingenio, Filiale de Loto-Quebec's Motion to Dismiss Amended Complaint [ECF No. 30] is **GRANTED**.  But with respect to Count II (rescission) and Count III (accounting), Plaintiffs shall have ten days to file a Second Amended Complaint, should they choose to do so.  If Plaintiffs do not file a Second Amended Complaint within ten days, the case will be closed.[7]

**DONE and ORDERED** in Fort Lauderdale, Florida, this 29th day of May 2014.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT COURT

---

[7] As Plaintiff's claims warrant dismissal, the Court declines to embark on the factually-intensive examination of whether "Internet Cafes" offer illegal gambling, and whether such use of the Patents falls within Plaintiff's field of use under the License Agreement.  *See* ECF No. 30 at 5-9; ECF No. 36 at 4-9.